**STATE**

**v.**

**Robert H. SILVIA.**

**No. 2002–164–C.A.**

Supreme Court of Rhode Island.

Dec. 4, 2003.

Virginia M. McGinn, Esq., Providence, for Plaintiff.

Paula Rosin, Esq., Providence, for Defendant.

Present: WILLIAMS, C.J., and FLANDERS, GOLDBERG, FLAHERTY, and SUTTELL, JJ.

## OPINION

PER CURIAM.

The defendant, Robert H. Silvia, appeals from a Superior Court adjudication that he violated the terms and conditions of his probation. The case came before the Supreme Court for oral argument on November 13, 2003, pursuant to an order that directed the parties to show cause why this appeal should not be summarily decided. After hearing the arguments of counsel and examining the memoranda submitted by the parties, we are of the opinion that cause has not been shown and that the issues raised by this appeal should be summarily decided.

After entering a plea of nolo contendere to a charge of first-degree sexual assault in March 1994, Silvia received a twenty-year sentence of imprisonment, with fifteen of those years to be suspended with probation. After his release from prison, and while he was on probation, Silvia was charged with the first-degree murder of Joseph Lima. As a result of the murder charge, he also was served with a probation violation notice pursuant to Rule 32(f) of the Superior Court Rules of Criminal Procedure. A joint probation-violation and bail hearing subsequently was conducted in the Superior Court. The following facts were gleaned from witness testimony at that hearing.

On November 30, 2001, Silvia was at the Somewhere Else Bar in Central Falls, Rhode Island, when he witnessed a minor altercation between his friend Stephen Santos and the bartender, Margaret White. Silvia voluntarily interjected himself into the situation by verbally confronting White and slamming his beer bottle upon the bar counter. Lima, who also was present, loudly reprimanded Silvia from across the room for using profane language and accused him of treating White with disrespect. Lima attempted to approach Silvia, but his path was physically blocked by other patrons. Shortly thereafter, Silvia left the bar on his bicycle. Santos also left and went to a nearby establishment called Destiny's. Lima remained at the bar.

Approximately ten minutes after Silvia had departed, White received a loud and menacing telephone call from Silvia, during the course of which he threatened to set fire to the bar while she was inside. White hung up the receiver and Silvia telephoned again. Although he sounded calmer this time, White, nevertheless, again hung up the receiver. She then contacted the bar owner, Kathleen Ash, who had been upstairs at the time, and explained the developing situation to her.

Ash then left the bar and went to Destiny's so that she could speak with Santos about the evening's events. Lima insisted on accompanying Ash on her trip. As they later were returning from Destiny's, Ash observed Silvia straddling his bicycle in a parking lot across the street from the bar. Another individual, Warren Dolan, was blocking the bicycle's path in an effort to reason with Silvia about his earlier behavior.[1] Ash approached the men and verbally upbraided Silvia about the evening's previous events. Silvia immediately apologized to Ash in what appeared to be a calm and contrite manner.

At that point, Lima also confronted Silvia. Silvia immediately dismounted his bicycle and approached Lima, who was standing near his truck. An angry altercation then ensued between the two men. There was testimony that Lima was observed backing away from Silvia with his hands crossed over his chest and that when Lima opened his arms, Silvia punched him in the stomach and raised a knee into his groin area. As Lima fell to the ground, Silvia ran away. Lima later bled to death as a result of a single stab wound to the abdomen.

■ At the conclusion of the violation hearing, the trial justice was satisfied that Silvia had failed to keep the peace and be of good behavior, and adjudicated him to be a violator of the terms and conditions of his probation. Silvia appeals, contending that the state failed to present sufficient evidence to satisfy its burden of proving a violation. He maintains that Lima, who was the larger and stronger of the two men, was the aggressor, and that no potential avenue of retreat was available to him because his bicycle was immobilized, he was surrounded by hostile individuals and he had his back to a fence. He urges, therefore, that a substantial question exists as to whether he acted in self defense on the night of the killing.

■ "A probation-violation hearing (also referred to as probation-revocation hearing) is not part of the criminal-prosecution process; therefore, it does not call for the 'full panoply of rights' normally guaranteed to defendants in criminal proceedings." *State v. Vashey*, 823 A.2d 1151, 1154–55 (R.I.2003) (per curiam) (quoting *Hampton v. State*, 786 A.2d 375, 379 (R.I. 2001)). "[T]his Court's review of a [trial] justice's decision in a probation-violation proceeding is limited to considering whether the [trial] justice acted arbitrarily or capriciously in finding a violation." *State v. Beverly*, 822 A.2d 170, 171 (R.I.2003) (per curiam) (quoting *State v. Fuscaldo*, 793 A.2d 1044, 1045 (R.I.2002) (mem.)). "Rather than proving its case beyond a reasonable doubt, the prosecution need only 'establish the violation using reasonably satisfactory evidence.' " *Id.* (quoting *State v. Pagan*, 793 A.2d 1046, 1047 (R.I. 2002) (mem.)). "[T]he credibility of witnesses and the weight to be accorded their testimony is solely the function of the trial justice." *Id.* at 172 (quoting *Fuscaldo*, 793 A.2d at 1045).

■ On the issue of self defense, it is axiomatic "that individuals believing that they are in imminent peril of bodily harm can use such nondeadly force as is reasonably necessary in the circumstances to protect themselves." *State v. Rieger*, 763 A.2d 997, 1002 (R.I.2001) (quoting *State v. Martinez*, 652 A.2d 958, 961 (R.I.1995)). Thus, "although a person may defend himself or herself without the necessity of waiting for the first blow, the individual

---

1. Other individuals present at or near the scene were Dolan's wife, Catherine, and a man named Victor Estrada, who happened to witness the events from a neighboring driveway.

may use only such force as is reasonably necessary to protect himself or herself." *Id.* at 1002–03 (citing *State v. Guillemet,* 430 A.2d 1066, 1068 (R.I.1981)). However, when deadly force is involved, "individuals [who are] attacked must attempt to retreat if they are consciously aware of an open, safe and available avenue of escape." *Id.* at 1003 (quoting *Martinez,* 652 A.2d at 961).

The record reveals that the trial justice carefully and properly weighed all the evidence and the credibility of the witnesses. He found that the telephone threat to White, standing alone, constituted a failure to keep the peace and be of good behavior. He then specifically rejected Silvia's theory of self defense, finding that Silvia chose to return to the scene with a concealed knife well after his initial confrontation with Lima had ended. He further concluded that although the witnesses present in the parking lot were angry with Silvia, they did not pose a threat to him, and that Silvia chose not to leave the scene after his conversation with Dolan, whom the trial justice considered to be a peacemaker. The trial justice then observed that when Lima approached, Silvia did not remain in the safety zone next to Dolan; instead, "he put his bike down and went over towards Lima's truck with Lima." He concluded that Silvia used disproportionate force against Lima under the circumstances.

Of particular significance to these conclusions, were the trial justice's findings with respect to the testimony given by Victor Estrada. At the time of the killing, Estrada happened to be in a nearby driveway when he observed the events in question. The trial justice found Estrada to be a neutral and detached observer whose testimony was both credible and "sufficiently straight forward and clear" and he concluded from this testimony that "based

upon the totality of the circumstances that [Silvia]was, in fact, the aggressor."

Our review of the record reveals that that the evidence was more than satisfactory for the trial justice to find a violation. Consequently, the trial justice did not act arbitrarily or capriciously in adjudicating Silvia as a violator of the terms of his probation.

For the foregoing reasons, the judgment is affirmed and the papers in this case are remanded to the Superior Court.