June 8, 2017

**Supreme Court**

No. 2015-267-C.A.

(N2/13-68A)

State                                                          :

     v.                                                          :

Kevin Corleto.                                          :

NOTICE:    This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

State                                        :

    v.                                       :

Kevin Corleto.                               :


Present: Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

## O P I N I O N

**Justice Robinson, for the Court.** The defendant, Kevin Corleto, appeals from an order

of the Superior Court denying his motion to dismiss on double jeopardy grounds[1] a criminal

information charging him with breaking and entering a dwelling, in violation of G.L. 1956 § 11-

8-2. Specifically, the defendant's motion to dismiss was predicated on alleged prosecutorial

goading that resulted in the declaration of a mistrial. This case came before the Supreme Court

for oral argument on April 5, 2017, pursuant to an order directing the parties to appear and show

cause why the issues raised in this appeal should not be summarily decided. After a close review

of the record and careful consideration of the parties' arguments (both written and oral), we are

satisfied that cause has not been shown and that this appeal may be decided at this time.

For the reasons set forth below, we affirm the order of the Superior Court.

---

[1]     This Court has held that the denial of a motion to dismiss on double jeopardy grounds is
immediately appealable, even though such an appeal is interlocutory. See State v. O'Connor,
936 A.2d 216, 217 (R.I. 2007); see also State v. Casas, 792 A.2d 737, 739 (R.I. 2002).

# I

## Facts and Travel

On January 3, 2013, defendant was charged with for breaking and entering the dwelling of one Elizabeth Murphy, in violation of § 11-8-2.[2] His jury trial commenced on May 13, 2014.

At trial, the state presented Ms. Murphy as its only witness. Ms. Murphy testified that she then owned and had resided in a "one-family home" in Newport for the past seventy-three years. She proceeded to testify that, on what she characterized as the "unforgettable" day of September 22, 2012, at around 2:30 in the afternoon, she was working on her computer in the den, which is located in the back portion of her house and outside of which is a deck. She stated that, at some point during that afternoon, she "heard somebody climbing over the railing on the deck." Ms. Murphy testified that she looked out and saw dark brown hair on a person's head—which hair color "was about the same color" as that of her grandson; she added that, for that reason, she "assumed" that the person was her grandson. Ms. Murphy stated that she went to the back door "to give him the devil" for having climbed over the railing. She further testified that, without "look[ing] out the curtain," she then unlocked and opened the door. She added that she noticed that "the screen door had already been opened" and that she saw defendant "crouched down." She said that he suddenly "jumped into the foyer" of her home. Ms. Murphy testified that defendant held up both of his hands in the form of "two fists" and said: "I got medicine for the lady next door." (She noted that there was "nothing" actually in his hands at that time.) Ms.

---

[2]     It bears noting that defendant was also charged with a similar count of breaking and entering the dwelling of Sean Reilly (a neighbor of Ms. Murphy), also in violation of G.L. 1956 § 11-8-2; however, that count was in due course dismissed by the trial justice. The defendant was additionally charged with one count of disorderly conduct while in the dwelling of Mr. Reilly, in violation of G.L. 1956 § 11-45-1, as to which defendant eventually entered a plea of nolo contendere. Accordingly, for the purpose of the present appeal, we are concerned solely with the count referenced in the text—viz., breaking and entering into the dwelling of Ms. Murphy, in violation of § 11-8-2.

Murphy testified that, at that juncture, she told defendant that "the lady next door," who happened to have been her sister-in-law, "had gone back to Georgia." She added that, in reaction to that revelation by her, defendant "looked at [her] and he said 'Fuck. Oh, fuck.'" She replied, "Watch the language," but defendant "looked right at [her]" and responded: "'Fuck you.'" Ms. Murphy stated that she thereafter "shoved [defendant] out the door" with "[t]wo hands." And she said that, as a result, "[h]e went back and he hit the screen door * * * and he fell out the step." Ms. Murphy concluded her direct testimony by stating that, about fifteen minutes after the just-described incident, her son arrived, to whom she related what had happened—resulting in his advising her to call the police.

During the course of cross-examination, defense counsel pointed out several details in Ms. Murphy's testimony that had been omitted from her two prior witness statements to the police (dated September 22, 2012 and November 25, 2012, respectively). Specifically, Ms. Murphy conceded that, in those two prior statements, she never mentioned: "the screen door" or that defendant was "crouched down" or that he had held "his hands out in close[d] fist[s]." Ms. Murphy explained to the cross-examiner that, at the time she wrote her first statement, which occurred on the day of the above-described incident, she was "very upset."

Before the presentation of closing arguments, the trial justice, outside the presence of the jury, posed the following question to both the prosecutor and defense counsel: "Based upon their assessment of the evidence, are the parties at a different place than they were at the beginning of this trial, vis-à-vis a resolution, without having a jury verdict?" After the parties responded that their respective positions remained the same, the trial justice engaged in the following dialogue with both of them:

> "[THE COURT]: If my recollection is correct then, * * * the place
> where the defendant was was a willingness to plea to an amended

-3-

charge of trespassing, with a sentence, a recommendation for --
hopefully a recommendation from the State of a sentence of home
confinement for a time frame of 364 days.

"[DEFENSE COUNSEL]: That's correct, your Honor.

"[THE COURT]: * * * [T]hat was what the defendant sought * * *
before we commenced jury empanelment; am I correct?

"[PROSECUTOR]: That is correct, your Honor.

"[THE COURT]: But the State is still of the opinion that the
evidence offered is sufficient to allow this jury to convict the
defendant of the charge of breaking and entering?

"[PROSECUTOR]: Yes, your Honor."

On May 15, 2014, in the course of her closing argument to the jury, the prosecutor made the following comment: "There is no testimony, no evidence before us that explains why Mr. Corleto was climbing over a back deck railing, somebody's back yard." Defense counsel immediately objected and moved to pass the case.[3] Counsel argued that the "comment * * * seem[s] to suggest that because Mr. Corleto did not testify, did not explain or justify why he leaped over the railing," it constituted a "substantial abridgement of Mr. Corleto's Fifth Amendment privilege against self-incrimination."[4] In response, the prosecutor argued "that the statement during the closing at issue was * * * relatively innocuous * * * [and was] not intended to suggest that there must be evidence * * * as to why Mr. Corleto was climbing over a railing." The prosecutor added that her intention "was merely to point out that [defendant] was climbing

---

[3]     "In Rhode Island, the terms 'motion to pass the case' and 'motion for a mistrial' are synonymous." O'Connor, 936 A.2d at 218 n.2; see also State v. Fortes, 922 A.2d 143, 148 n.3 (R.I. 2007); State v. Disla, 874 A.2d 190, 198 (R.I. 2005).

[4]     We note that, in a commendable display of professionalism and candor, defense counsel made the following comment in the course of his motion to pass the case: "I certainly am not arguing to this Court that [the prosecutor] intentionally has tried to create this problem. Sometimes it happens." In view of that remark, we could arguably decide this case on the basis of that concession. However, after due consideration, we deem it to be fairer and more appropriate to base our decision on the objective findings made by the seasoned trial justice who presided over this case.

over the railing in furtherance of going to the back door of Mrs. Murphy's house." And the prosecutor suggested that the statement at issue "could be cured with a cautionary instruction."

After listening to argument from the parties, the trial justice preliminarily observed that the prosecutor's comment during closing argument "was not directed specifically to the defendant's failure to take the stand;" he nonetheless ruled that the comment at issue "indirectly address[ed] the defendant's failure to take the witness stand." He noted that, in the instant case, only Ms. Murphy had testified; and he added that, notably, her "testimony [had] not [been] attacked or impeached by the [d]efendant." As such, the trial justice reasoned that "the only person who could refute the evidence would be Mr. Corleto." Eventually, he determined that a curative instruction could not cure the "unintentional but unfortunate reference, obliquely, to the defendant's failure to testify." And the trial justice then granted defendant's motion to pass the case.

Over a month later, on June 20, 2014, defendant filed a motion to dismiss the information on grounds of double jeopardy. A hearing on that motion was held on July 16, 2014, at which the same trial justice reviewed the record and heard arguments from defense counsel and the prosecutor. Then, in ruling on defendant's motion, the trial justice first recalled his earlier observation that the prosecutor's comment was "unintentional but unfortunate." He also opined that "[t]he misconduct * * * did not occur when the case was unraveling." The trial justice then explained that his inquiry after trial and before closing arguments as to the parties' "respective positions" had not been "a suggestion" or "a hint," but rather had been "an inquiry as to whether or not the parties would be prepared or willing to resolve the matter without closing argument, without instructions and without jury deliberations." In addition, the trial justice expressly stated his disagreement with defense counsel's assertion that the state believed that its case had been

unraveling; he reasoned that, if that had been true, "the [s]tate would have jumped at the opportunity to amend the charge to a trespass" and "defendant would have been less likely * * * to have stated his willingness to accept an amendment" to the charge. He also found that there was no evidence demonstrating that, taking into account the extent of the experience of the prosecutor, "she knew or should have known better that she was not permitted to make" such a comment; he found "objectively" that the prosecutor's experience had been "minimal." Ultimately, the trial justice ruled "as a matter of fact or a matter of law that the State's actions in making that unfortunate reference to there being no evidence was * * * not intended to goad the defendant into seeking a mistrial;" and he denied defendant's motion to dismiss. A timely notice of appeal ensued.

## II

### Standard of Review

As this Court has stated on numerous occasions, "where a defendant has moved for a mistrial and asserts on appeal that double jeopardy bars his retrial because of prosecutorial goading, we defer to the trial court's findings of fact." State v. O'Connor, 936 A.2d 216, 220 (R.I. 2007); see State v. Hull, 754 A.2d 84, 87 (R.I. 2000); see also State v. Diaz, 521 A.2d 129, 133 (R.I. 1987); State v. Gordon, 508 A.2d 1339, 1346 (R.I. 1986). We note that "[a] trial court's finding as to 'whether prosecutorial misconduct was intended to provoke the defendant into seeking a mistrial is a factual question that is appropriately decided by the trial court.'" O'Connor, 936 A.2d at 220 (quoting Diaz, 521 A.2d at 133); see also Oregon v. Kennedy, 456 U.S. 667, 675 (1982). It follows that, "[o]n appeal, we will not disturb the trial [justice]'s finding on that factual issue if it is supported by competent evidence." State v. Rolle, 84 A.3d 1149, 1154 (R.I. 2014) (internal quotation marks omitted); see O'Connor, 936 A.2d at 220.

# III

## Analysis

On appeal to this Court, defendant contends that the Superior Court committed reversible error when it declined to grant his motion to dismiss on double jeopardy grounds. In particular, he avers that the state's "egregious behavior" goaded him into requesting a mistrial, thereby "implicat[ing] the Double Jeopardy clauses of the Fifth and Fourteenth Amendments to the United States Constitution[] as well as Article I § 7 of the Rhode Island Constitution." In stark contrast, the state argues that the trial justice's decision denying defendant's motion to dismiss was "supported by competent evidence [in the record] and should be affirmed."

Ordinarily, when a mistrial has been granted at a defendant's behest, the prohibitions on double jeopardy contained in the United States and Rhode Island Constitutions do not preclude the retrial of that defendant's criminal case. Rolle, 84 A.3d at 1154; State v. Casas, 792 A.2d 737, 739 (R.I. 2002). However, there is a narrow exception for those instances "[w]here a prosecutor has engaged in extreme misconduct intended to provoke the defendant into moving to pass the case." Rolle, 84 A.3d at 1155; see Casas, 792 A.2d at 739; State v. Beltre, 764 A.2d 190, 191 (R.I. 2000) (mem.); State v. McIntyre, 671 A.2d 806, 807 (R.I. 1996). This Court has continued to "steadfastly adhere[] to the rule announced in Oregon v. Kennedy, 456 U.S. 667, 676, * * * (1982), that a second trial is not forbidden unless the prosecutor's conduct was specifically intended to goad the defendant into moving for a mistrial." Rolle, 84 A.3d at 1155; see McIntyre, 671 A.2d at 807.

It is well settled that "[t]o infer the existence or nonexistence of intentional goading," the trial justice must scrutinize "the objective facts and circumstances surrounding the prosecutor's misconduct." Rolle, 84 A.3d at 1155. The pertinent factors in that context "include the timing

of the misconduct, the experience of the prosecutor, and whether there was a legitimate reason for the misconduct." Id.; see O'Connor, 936 A.2d at 222-23 n.6.; Casas, 792 A.2d at 740; McIntyre, 671 A.2d at 807. Especially relevant to the instant case is the principle that mere error on the part of the prosecutor will not preclude retrial, even if "it may incite a mistrial." O'Connor, 936 A.2d at 222. We remain cognizant in this context of the importance of striking "a careful balance between the right of a defendant to obtain a completion of his trial by the first tribunal assembled to pass in judgment upon him and the societal interest in apprehending and punishing those who are guilty of serious crimes." Diaz, 521 A.2d at 133; see also Rolle, 84 A.3d at 1155.

In the case at bar, it is our opinion that the trial justice did not err in determining that the prosecutor did not goad defendant into moving for a mistrial. When the trial justice declared the mistrial, he tersely expressed his view that the prosecutor's comment during closing argument was an "unintentional but unfortunate reference, obliquely, to the defendant's failure to testify." It is noteworthy that he repeated that same observation several weeks later at the hearing on defendant's motion to dismiss the information on double jeopardy grounds. In denying that motion, the trial justice set forth several findings, of which the following are particularly relevant to the issue raised on appeal: the prosecutor's "misconduct * * * did not occur when the case was unraveling;" the experience of the prosecutor was "minimal;" and, notably, there was "no evidence" in the record demonstrating that the prosecutor's comment during closing argument was intended "to goad defendant into seeking a mistrial." It is clear to us that the trial justice's findings were amply supported by competent evidence. The trial justice considered all of the arguments presented by the parties and "performed a balanced and conscientious analysis of the objective facts and circumstances in" the case before him. Rolle, 84 A.3d at 1156. The record

supports the view that the prosecutor's comment during closing argument was likely "the result of a mistake"—and it must be borne in mind that "a prosecutorial mistake does not, in and of itself, constitute goading." O'Connor, 936 A.2d at 223. And, it should also be recalled that, with respect to the issue of intentional goading vel non, "[t]his Court gives deference to the trial court's findings on this issue; the question of whether or not prosecutorial misconduct was intended to provoke a defendant into moving for a mistrial is a factual question for the trial court." Id.; see also Rolle, 84 A.3d at 1154.

After thoroughly reviewing the entire record, we perceive no basis for concluding that the trial justice erred in determining that the prosecutor did not intentionally goad the defendant into moving for a mistrial. "Because we, like the Superior Court [in the instant case], perceive no evidence of intent on behalf of the prosecutor to goad [the defendant] into moving for a mistrial, we affirm the order denying [his] motion to dismiss." O'Connor, 936 A.2d at 223.

## IV

## Conclusion

For the reasons set forth in this opinion, the defendant's appeal is denied and dismissed. The order appealed from is affirmed, and the papers in the case may be returned to the Superior Court for further proceedings.

STATE OF RHODE ISLAND AND ⚓ PROVIDENCE PLANTATIONS

## SUPREME COURT – CLERK'S OFFICE

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | State v. Kevin Corleto. |
| **Case Number** | No. 2015-267-C.A.<br>(N2/13-68A) |
| **Date Opinion Filed** | June 8, 2017 |
| **Justices** | Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ. |
| **Written By** | Associate Justice William P. Robinson, III |
| **Source of Appeal** | Newport County Superior Court |
| **Judicial Officer From Lower Court** | Associate Justice Edward C. Clifton |
| **Attorney(s) on Appeal** | For State:<br><br>Lauren S. Zurier<br>Department of Attorney General<br><br>For Defendant:<br><br>Gary G. Pelletier, Esq.<br>Maria Caley, Esq. |